864 So.2d 432 (2003)
CITY OF LAUDERHILL, a municipality, Appellant,
v.
John RHAMES, Dan Mathis, and Robert Marto, Appellees.
No. 4D02-101.
District Court of Appeal of Florida, Fourth District.
October 22, 2003.
Rehearing Denied February 9, 2004.
*433 Vanessa A. Reynolds and Janine R. Kalagher of Conrad & Scherer, LLP, Fort Lauderdale, for appellant.
Thomasina H. Williams of Law Offices of Williams & Associates, P.A., Miami, for appellees.
GROSS, J.
This is a case where the City of Lauderhill reorganized its police department and eliminated the position of lead police officer. Three former lead police officers sued the City over their failure to receive the equivalent rank of sergeant in the reorganized department. All three officers recovered a final judgment for damages against the City for substantive due process violations under 42 U.S.C. § 1983.
Because we hold that the officers failed to state a cause of action for substantive due process violations in this employment case, we reverse the verdict with instructions to the trial court to enter judgment in favor of the City.

Introduction
In May 1999, John Rhames, Dan Mathis, and Robert Marto (the "Officers"), filed an *434 amended complaint. They alleged that the City's decision to abolish the position of Lead Patrol Officer ("LPO") constituted a deprivation of their due process rights under section 1983. They also claimed a violation of the Florida Police Officers' Bill of Rights, section 112.532(4), Florida Statutes (1995).
The trial court denied the City's motion for summary judgment, and the case proceeded to trial in October 2001. For substantive due process violations, the jury awarded damages of $105,000 to Officer Rhames, $350,000 to Officer Mathis, and $360,000 to Officer Marto. The City timely moved for judgment notwithstanding the verdict, or in the alternative, for a new trial. The trial court denied the City's motions.
On appeal, the City challenges the trial court's denial of its motions for summary judgment, the failure to grant a motion for directed verdict, and the denial of the City's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The Officers cross-appeal only the trial court's denial of equitable relief in addition to the damage awards.

The evidence at trial[1]
At its heart, this is a case based on an employment dispute. The Officers' complaint was that they were not made sergeants after they held the equivalent, permanent position in an earlier administration.
In October 1994, the City decided to establish its own police department. It hired Michael Scott as chief of police and directed him to structure and staff the new police force. Scott attempted to organize the department based on an experimental methodology called "problem oriented policing," and to create a "flat line" department, where the number of supervisory positions was minimal.
To implement this plan, Chief Scott recommended that the City Commission adopt an unconventional system of job positions within the department. On June 10, 1996, the City Commission adopted this plan. Trying to portray the City's police as "more approachable," Chief Scott elected not to use traditional military ranks. Instead, he adopted a hierarchy in which a rank and file police officer was referred to as a road patrol officer; a first-line supervisor was referred to as a "lead patrol Officer"; and the next officer in the chain of command was known as an "Executive Officer." All Executive Officers reported *435 to the Deputy Chief, who in turn directly reported to Chief Scott.
Chief Scott developed the job description for the LPO position by studying the description for the sergeant position at other law enforcement agencies. The LPO position was the equivalent of sergeant under a traditional police department ranking system.
The Officers were amongst the first LPOs that Chief Scott hired. Each was initially placed as an entry level road patrol officer.[2] To be designated as a LPO, an officer had to undergo an interview, complete an eighty-hour supervisory course at Broward County Community College, and pass a one-year probationary period. If an officer failed to complete this probationary period, he or she would return to being a line officer.
All three Officers successfully completed the probation, making their supervisory positions secure and "permanent"; no longer were they "at-will employees" who could be terminated without cause.
In January 1997, Chief Alberto Melis replaced Chief Scott. Soon after, Chief Melis decided to reorganize the department. He felt that the existing organization was "awkward and unresponsive" and was "too flat with a span of control that [was] too broad providing ... little direct supervision."
Chief Melis informed all the LPOs that they would be working as acting sergeants. On March 6, 1997, the department distributed a memo to all personnel indicating that anyone who wanted to be a sergeant had to submit a letter of intent or notice to take the sergeant exam.
By resolution, the City Commission formally adopted and approved the job description of Police Sergeant on April 14, 1997. Among the requirements for the sergeant's position was that an officer have a minimum of three years experience as a certified police officer, an associate's degree from an accredited college (with a bachelor's degree preferred), and a State of Florida law enforcement certification. Officers were also required to take a written exam and submit to an oral interview. As part of the reorganization, the City Commission passed a second resolution eliminating the LPO position.
The duties of sergeant and LPO were identical. As the Officers point out in their brief, "the first line supervisory position still exist[ed] in [the] Department," although it had been renamed "sergeant." One of the officers explained that a "day under Mike Scott's administration as a lead police officer was the same as a day under Alberto Melis' administration as a first line supervisor."
Chief Melis informed Officer Marto that all LPOs would be "grandfathered in" when the newly-created sergeant position was approved by the City Commission. Officer Marto and the other LPOs were often referred to by the City, by court documents, and by subpoenas, as "sergeant"; were issued ID cards signed by Chief Scott with the title "Sergeant"; received collar pins identifying them as sergeants; received written correspondence referencing to their position as LPOs or first-line supervisors or as sergeants; and drove patrol cars that identified them as sergeants.
After the elimination of the LPO position, Chief Melis told the Officers that they *436 were being demoted to the non-supervisory position of police officers as "acting sergeants." To obtain the full-time sergeant position, the officers were required to meet the criteria, take and pass written and oral tests, and then be placed on an eligibility list for consideration. As Officer Rhames described it, the Officers would have to "retest, reprove and requalify" to even become eligible to be sergeants.
Chief Melis informed the Officers that if they did not take the written test, they would lose their job as first-line supervisors. However, Chief Melis told the Officers that they did not have to worry about the exams. He explained that all of the Officers would be retained after taking the test and that only one first-line supervisor, a probationary employee, would not be promoted.
All three Officers voiced their concerns about having to take a written test and about the possibility of demotion. Although Officer Rhames initially refused to submit to the test, he eventually took it, fearing he would not have an opportunity to be a sergeant otherwise.
Officer Marto was not promoted to sergeant. His salary was reduced from $37,000 to $33,000 annually. He suffered emotionally from being a regular police officer working alongside many of the same officers he had formerly supervised.
Officer Rhames passed the sergeant's examination, and was then promoted to sergeant. He had to complete a new one-year probationary period and lost seniority for a time. Chief Melis reneged on a promise to make Officer Rhames head of the traffic unit. Instead, he transferred Rhames, who is a single father, from the day shift to the midnight shift.
Officer Mathis finished in the top 10% for the written exam, and finished first in the oral exam. However, he was not promoted to the rank of sergeant, and thereafter resigned from the department. He then obtained a job with the Hillsborough County Sheriff's Office.
Chief Melis claimed that his motivation for reorganizing the department was organizationally, and never personally, directed. In a deposition taken before trial, he observed that all three of the Officers "were excellent officers and excellent supervisors."
The section 1983[3] case went to the jury on substantive due process grounds.[4] The court declined to submit the issue of procedural due process to the jury. As indicated above, the jury returned damage verdicts in favor of the Officers.

If it does not implicate a fundamental right, an adverse employment decision rendered through an executive act will not support a public employee's claim of a substantive due process violation under 42 U.S.C. § 1983
After reading the briefs and cases cited by the parties, we agree with three federal *437 courts, that substantive due process "is an area of law `famous for controversy, and not known for its simplicity.'" Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 122 (3d Cir.2000), abrogated by United Artists Theatre Circuit, Inc. v. Township of Warrington, Pa., 316 F.3d 392 (3d Cir. 2003) (citations omitted); Kauth v. Hartford Ins. Co. of Ill., 852 F.2d 951, 956 (7th Cir.1988); Schaper v. City of Huntsville, 813 F.2d 709, 716 (5th Cir.1987).
Our experience is that lawyers and judges venturing into the thicket of due process concepts frequently do not distinguish between substantive and procedural due process. Often, the resulting arguments resemble the fable of the blind men and the elephant; because each man touched a different part of the elephant's body, each described the elephant differently.[5]
To analyze this case, it is important to understand the parameters of a section 1983 due process case.
The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has held that both substantive and procedural due process protections arise from this clause, and a violation of either may be addressed by a section 1983 suit. See Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). As the Supreme Court wrote in Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000):
We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests."
(Citations omitted).
As the third circuit has observed, "the fabric of substantive due process, as woven by our courts, encompasses at least two very different threads." Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000).
"The first thread of substantive due process applies when a plaintiff challenges the validity of a legislative act." Id. (emphasis in original). Legislative acts generally apply to large segments of society; "laws and broad-ranging executive regulations are the most common examples." McKinney v. Pate, 20 F.3d 1550, 1557 n. 9 (11th Cir.1994) (en banc).[6] If it does not involve a fundamental right, a substantive due process challenge to a legislative act is reviewed under a rational basis test. See TRM, Inc. v. United States, 52 F.3d 941, 945 (11th Cir.1995).
The rational basis test does not impose a rigorous standard of review. A legislative act will withstand a substantive due process challenge "if the government *438 `identifies a legitimate state interest that the legislature could rationally conclude was served by the statute.'" Nicholas, 227 F.3d at 139 (quoting Alexander v. Whitman, 114 F.3d 1392, 1403 (3d Cir. 1997) (quoting Sammon v. N.J. Bd. of Med. Exam'rs, 66 F.3d 639, 645 (3d Cir. 1995))); see also Chicago Title Ins. Co. v. Butler, 770 So.2d 1210, 1214-15 (Fla.2000) ("The test to be applied in determining whether a statute violates due process [when no fundamental constitutional rights are implicated] is whether the statute bears a rational relation to a legitimate legislative purpose in safeguarding the public health, safety, or general welfare and is not discriminatory, arbitrary, or oppressive.").[7]
The eleventh circuit has observed that the rational basis test "is generally easily met." Cash Inn of Dade, Inc. v. Metro. Dade County, 938 F.2d 1239, 1241 (11th Cir.1991). The court described the rational basis test:
The task is to determine if "any set of facts may be reasonably conceived to justify" the legislation.... To put it another way, the legislation must be sustained if there is any conceivable basis for the legislature to believe that the means they have selected will tend to accomplish the desired end. Even if the court is convinced that the political branch has made an improvident, illadvised, or unnecessary decision, it must uphold the act if it bears a rational relation to a legitimate governmental purpose.
Id. (citations omitted); TRM, 52 F.3d at 945.
The second thread of substantive due process protection applies to "non-legislative" or "executive" acts. Such acts "characteristically apply to a limited number of persons." McKinney, 20 F.3d at 1557 n. 9. Non-legislative or executive acts "typically arise from the ministerial or administrative activities of members of the executive branch. The most common examples are employment terminations." Id.; see also Nicholas, 227 F.3d at 139 n. 1.
A fundamental right that falls within the ambit of substantive due process may not be taken away by a state's executive or non-legislative acts "for reasons that are `arbitrary, irrational, or tainted by improper motive,' Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000) (quoting Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir.1988)), or by means of government conduct so egregious that it `shocks the conscience,' Boyanowski [v. Capital Area Intermediate Unit], 215 F.3d 396, 401 [3d Cir.2000] (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998))." Nicholas, 227 F.3d at 139; see Reserve, Ltd. v. Town of Longboat Key, 17 F.3d 1374, 1379 (11th Cir.1994).
The threshold inquiry for a non-legislative substantive due process claim is whether a plaintiff has demonstrated an interest to which substantive due process protection applies. Nicholas, 227 F.3d at 139-40. Substantive due process protects "fundamental" rights or interests that are deeply rooted in this Nation's history and tradition. See Washington v. Glucksberg, 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). As the Supreme Court wrote in Glucksberg:

*439 Our established method of substantivedue-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed[.]" Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. Our Nation's history, legal traditions, and practices thus provide the crucial "guideposts for responsible decisionmaking," that direct and restrain our exposition of the Due Process Clause.
Id. at 720-21, 117 S.Ct. 2258 (citations omitted).[8]
Because an employee's property interest in an express or implied employment contract is not "deeply rooted in this Nation's history and tradition," such a right is not protected by substantive due process. As McKinney observed:
Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process clause, not its substantive component. Because employment rights are state-created rights and are not "fundamental" rights created by the Constitution, they do not enjoy substantive due process protection.
20 F.3d at 1560 (emphasis added); see also Ammons v. Okeechobee County, 710 So.2d 641, 645 (Fla. 4th DCA 1998) (relying on McKinney for the proposition that substantive due process protects only "fundamental" rights, not substantive rights created only by state law).
Most courts have held that absent a claim that a fundamental right has been denied by an employer,[9] state employment decisions are not entitled to substantive due process protection. See McKinney, 20 F.3d at 1559; see also Nicholas, 227 F.3d at 141 (holding that tenured professor is not entitled to substantive due process protection); Singleton v. Cecil, 176 F.3d 419, 425-26 (8th Cir.1999) (en banc) (holding that a public employee's interest in continued employment is "not so fundamental" a right as to be protected by substantive due process protection); Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1196 (2d Cir.1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive *440 due process protection."); Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1350-51 (6th Cir.1992) (tenured employee's state-based right to continued employment has no substantive due process protection); Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir.1990) ("[W]e do not believe liberty and justice are threatened, in the constitutional sense, by the failure of the government and its officials to abide by their contract with [the plaintiff]."); Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1142 n. 10 (4th Cir.1990) (professor's interest in position in university department "is essentially a state law contract right, not a fundamental interest embodied in the Constitution."); Kauth, 852 F.2d at 958 (plaintiff with state-created property interest cannot state a substantive due process claim unless alleging a violation of "some other substantive constitutional right"); but see Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 528-29 (10th Cir.1998) (holding that a public employee may raise a substantive due process claim if the government employer's actions are arbitrary, irrational, or shocking to the conscience); Harrington v. Harris, 118 F.3d 359, 368 (5th Cir.1997) (holding that a public employee may have a substantive due process claim if able to establish a property interest in a position and that termination of the position was arbitrary or capricious); Newman v. Massachusetts, 884 F.2d 19, 25 (1st Cir.1989) ("[S]chool authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive due process violation.").
Even though a non-legislative employment decision does not fall within the ambit of substantive due process protection, it is still subject to the requirements of procedural due process.[10] To be entitled to the protection of procedural due process, a property interest need not rise to the level of a fundamental right necessary to support a non-legislative substantive due process claim. McKinney, 20 F.3d at 1560; Nicholas, 227 F.3d at 140. For this reason, McKinney held
that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component. Because employment rights are state-created rights and are not "fundamental" rights created by the Constitution, they do not enjoy substantive due process protection.
20 F.3d at 1560.
Procedural due process involves three elements. State action must burden a protected right. See Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The right must be deprived without a fair hearing either because the claimant did not receive adequate notice, see Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 *441 L.Ed.2d 494 (1985), or a reasonable opportunity to be heard. Id. Procedural due process is distinct from substantive due process in that a "violation of a substantive due process right ... is complete when it occurs ... [and] no amount of process can justify its infringement. By contrast, a procedural due process violation is not complete `unless and until the State fails to provide due process.'" McKinney, 20 F.3d at 1557 (quoting Zinermon, 494 U.S. at 126, 110 S.Ct. 975).
In sum, Nicholas provides a succinct analytical framework for a section 1983 claim of a due process violation:
[W]hen a plaintiff challenges the validity of a legislative act, substantive due process typically demands that the act be rationally related to some legitimate government purpose. In contrast, when a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not "fundamental," however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.
227 F.3d at 142.
The Officers' claims in this case arise out of a state employment decision, a non-legislative act. Their property interest in the LPO position was not fundamental, so their claim falls outside the ambit of substantive due process.
The absence of a fundamental right in this case is apparent from the Officers' description of their protected right, that the Officers "had acquired a protected property interest in their positions as first line supervisors, because they could not be demoted or terminated without cause." Under the line of employment cases cited above, such a non-fundamental right cannot support a substantive due process claim in a case involving non-legislative action.
The Officers argue that McKinney does not apply because this case involves legislative action, the City Commission's adoption of a resolution abolishing the LPO position. Because of this, they argue that "their property interest in their positions was also sufficient to support their substantive due process claim."
This argument misses the point of a substantive due process challenge to a legislative act, which requires that the City's resolutions be reviewed under a rational basis test. Nowhere in their brief or in the court below did the Officers analyze the resolutions under the rational basis test.
The Commission's resolution obviously satisfies the rational basis test; it is hard to imagine that a city could not reorganize its police department to bring its job positions in line with the more traditional rank system of police departments around the country.
Moreover, the Officers' challenge is not to a legislative act, but to an executive decision by Chief Melis, who they say "stripped [them] of their positions." The Officers suffered no adverse result as a result of the City's resolutions. Had Chief Melis designated each of the officers a sergeant, with the attendant benefits and wages which the officers enjoyed in their capacity as LPOs, the officers would have suffered no harm. This case is, at its heart, an employment termination case arising from an executive act. Contrary to the Officers' argument, McKinney is directly on point.
We conclude, then, that the Officers' property right in employment was protected *442 not by the substantive component of the Due Process Clause, but only by its procedural component. There was no legal basis for the Officers' substantive due process claim to go to the jury.
The trial court declined to submit the procedural due process claim to the jury because it accepted the City's contention that the Officers did not timely prepare an appropriate jury instruction. The Officers did not cross-appeal that decision. In any event, we have reviewed the transcript of the trial proceedings on October 19 and 22, 2001. This decision was well within the trial court's discretion.
We reverse the final judgment, remand to the trial court, and direct that judgment be entered in favor of the City. In light of the reversal, the Officers' cross-appeal is moot.
KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] In considering the City's points on appeal, we review the record and trial evidence in the light most favorable to the Officers, who prevailed at trial.

When reviewing a ruling on summary judgment, an appellate court must examine the record and any supporting affidavits in the light most favorable to the non-moving party. See Campaniello v. Amici P'ship, 832 So.2d 870, 872 (Fla. 4th DCA 2002).
"A directed verdict is proper when the evidence and all inferences therefrom, considered in the light most favorable to the nonmoving party, support the movant's case as a matter of law and there is no evidence to rebut it." S. Fla. Water Mgmt. Dist. v. Daiagi, 824 So.2d 216, 217 (Fla. 4th DCA 2002) (emphasis added); Knowles v. Hennelly, 793 So.2d 1063, 1065 (Fla. 4th DCA 2001) ("[A] motion for directed verdict should only be granted where, viewed in the light most favorable to the non-moving party, `there is no evidence upon which a jury could properly rely in finding for the plaintiff.'") (quoting Stokes v. Ruttger, 610 So.2d 711, 713 (Fla. 4th DCA 1992)).
The City's last point is that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict ("JNOV"), or in the alternative, for a new trial. "[W]hen reviewing a JNOV, we must view all of the evidence in a light most favorable to the nonmovant and resolve all conflicts in the nonmovant's favor." Adelman v. St. Paul Guardian Ins. Co., 805 So.2d 106, 108 (Fla. 4th DCA 2002).
[2] Officer Rhames was first hired as an officer by the City in 1994. Within a month and a half, he was promoted to the position of officer-in-charge, a supervisory position created because of complaints from dispatchers that there was not a "go-to person" in charge of a police investigation. When Chief Scott left the department in 1996, the position "First line supervisor, sergeant," was equivalent to LPO.
[3] Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
[4] The Police Officers' Bill of Rights claim also went to the jury. The jury verdict does not differentiate between recovery for the substantive due process violation, and the Police Officers' Bill of Rights claim pursuant to section 112.532(4), Florida Statutes (1995). We note that this statute does not allow for monetary relief. See Sylvester v. City of Delray Beach, 584 So.2d 214 (Fla. 4th DCA 1991) (no right to damages against employer under this statute, with the exclusive remedy being injunctive relief).
[5] The poet John Godfrey Saxe summarized the dispute between the blind men:

And so these men of Indostan
Disputed loud and long,
Each in his own opinion,
Exceeding stiff and strong,
Though each was partly in the right,
And all were in the wrong!
John Godfrey Saxe, The Blind Men and the Elephant, available at http://www.noogenesis.com/pineapple/ blindmenelephant.html (last visited Oct. 10, 2003).
[6] In City of Pompano Beach v. Yardarm Restaurant, Inc., 834 So.2d 861, 869-70 (Fla. 4th DCA 2002), this court adopted McKinney`s distinction between legislative and executive acts.
[7] Conversely, when a legislative act impacts a fundamental right, the test to be applied is one of strict scrutiny; the "Fourteenth Amendment forbids the government to infringe... `fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Washington v. Glucksberg, 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (citation omitted) (emphasis omitted).
[8] In Glucksberg, the Supreme Court discussed the parameters of substantive due process and the fundamental rights protected by it. The "fundamental rights and liberty interests" protected by substantive due process include "the specific freedoms protected by the Bill of Rights," and the "rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." 521 U.S. at 720, 117 S.Ct. 2258 (citations omitted). The Court also acknowledged that there was no bright-line test to identify protected fundamental rights; it wrote that "the outlines of the `liberty' specially protected by the Fourteenth Amendmentnever fully clarified, to be sure, and perhaps not capable of being fully clarified have at least been carefully refined by concrete examples involving fundamental rights found to be deeply rooted in our legal tradition." Id. at 722, 117 S.Ct. 2258.
[9] An example of an employment case where an employer has infringed upon a fundamental right is Thornquest v. King, 82 F.3d 1001 (11th Cir.1996). There, the court pointed out that while McKinney barred a university professor's section 1983 substantive due process claim arising from his employment, it did not bar the professor's retaliatory discharge claim, based upon the contention that the professor's fundamental right to free speech had been implicated. Id. at 1004 n. 3.
[10] A number of Florida cases recognize the operation of procedural due process in the employment context. See, e.g., Tookes v. City of Riviera Beach, 633 So.2d 566 (Fla. 4th DCA 1994) (acknowledging that city employee had protected property interest in continued employment and could proceed on allegations that he was denied procedural due process by not being given notice and an opportunity to be heard prior to being terminated); Dep't of Highway Safety & Motor Vehicles v. Schluter, 705 So.2d 81 (Fla. 1st DCA 1997) (noting that highway patrol officers have a property interest in continued employment that is protected under due process clause, and that this interest may not be deprived without appropriate procedural due process procedures); Grice v. Kissimmee, 697 So.2d 186 (Fla. 5th DCA 1997) (finding a procedural due process violation where an officer, after being terminated, was denied opportunity to confront and crossexamine a witness whose allegations of misconduct formed the basis of the termination).