862 So.2d 845 (2003)
Marilyn TIEDEMANN, Appellant,
v.
DEPARTMENT OF MANAGEMENT SERVICES, Division of State Group Insurance, Appellee.
No. 4D02-3573.
District Court of Appeal of Florida, Fourth District.
December 10, 2003.
Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and John Tiedemann, North Palm Beach, for appellant.
Sonja P. Mathews, Tallahassee, for appellee.
GROSS, J.
Marilyn Tiedemann appeals from a final order of the Department of Management Services which denied health insurance benefits to Tiedemann and her daughter. *846 Tiedemann argues that this denial of benefits violated her constitutional rights of substantive due process and equal protection. Finding no constitutional violations, we affirm the order of the Department.
Tiedemann and her family participated in the State of Florida Self-Insured Group Insurance Plan. The Department is the state agency charged with regulating and administering the Plan. Blue Cross and Blue Shield of Florida, Inc. is the Plan's third-party administrator.
Before July 1, 2001, the Plan excluded from coverage those "services and supplies" received as a result of "an intentional self-inflicted injury whether the covered person was sane or insane." The plan defined an injury as "intentionally self-inflicted" if a person "intended to perform the act that caused the injury, regardless of whether the [person] intended to cause the injury."[1]
Before July 1, 2001, Tiedemann and her daughter each required medical services as a result of intentionally self-inflicted injuries. Medical service providers billed Tiedemann $21,269.27 for these services. Blue Cross denied coverage on the ground that the services were not covered by the plan. Tiedemann appealed that denial to the Department, which affirmed Blue Cross's determination to deny coverage.
Tiedemann petitioned for an administrative hearing. At the hearing, she challenged the Plan's treatment of intentionally self-inflicted injuries as "discrimination against the mentally ill." The Department did not dispute that Tiedemann and her daughter suffered from depression or that the medical services at issue were incurred as a result of their mental illness. Tiedemann argued that the distinction drawn by the Plan violated principles of equal protection and due process; she questioned how the plan could "cover treatment of a disease such as major depression, but not the symptom of the disease."
As for her equal protection challenge, Tiedemann concedes that mental illness, the basis for her claim, involves neither a suspect class nor a fundamental right. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); D.W. v. Rogers, 113 F.3d 1214, 1219 (11th Cir.1997). Therefore, the Plan's treatment of self-inflicted injuries will survive an equal protection challenge if it is rationally related to some legitimate government purpose. See City of Cleburne, 473 U.S. at 446, 105 S.Ct. 3249. The law may differentiate between persons similarly situated if there is a rational basis for doing so.
A classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (citations omitted). The rational basis need not be apparent from the Plan itself, nor must the state produce evidence to support the classification. Id. Rather, the classification "may be [legitimately] based upon rational speculation unsupported *847 by evidence or empirical data." Id. (citation omitted). The burden is on the plaintiff challenging the classification to "`negate every conceivable basis which might support [the classification],' whether or not the basis has a foundation in the record." Id. (citation omitted).
Tiedemann's due process challenge treats the Plan as a legislative act; the Plan document is approved and adopted by the legislature. See § 110.123(5)(a), Fla. Stat. (2001). "As a general matter, the Due Process Clause does not obligate states to provide [their] citizens with substantive services, even if those services are necessary to secure citizens' life, liberty, or property interests." D.W., 113 F.3d at 1217. Because this case does not involve a fundamental right, the substantive due process challenge is reviewed under a rational basis test. See City of Lauderhill v. Rhames, 864 So.2d 432, 436, 2003 WL 22399699 (Fla. 4th DCA Oct.22, 2003).
As we observed in Rhames, the rational basis test in a substantive due process case does not impose a rigorous standard of review; a legislative act will withstand challenge "if the government `identifies a legitimate state interest that the legislature could rationally conclude was served by the statute.'" Id. (citations omitted). Under the rational basis test, legislation will be sustained "if there is any conceivable basis for the legislature to believe that the means they have selected will tend to accomplish the desired end." Cash Inn of Dade, Inc. v. Metro. Dade County, 938 F.2d 1239, 1241 (11th Cir. 1991).
In this case, the equal protection and substantive due process claims give rise to essentially the same analysis of the Plan's exclusion of intentionally self-inflicted injuries. See Montalvo-Huertas v. Rivera-Cruz, 885 F.2d 971, 976 n. 7 (1st Cir.1989). The rational basis or government purpose proffered by the Department to justify the exclusion is the protection of public funds. Drawing lines concerning the type of illnesses a health plan should cover and the extent of benefits afforded involve decisions where the desirability of a treatment must be weighed against its cost. This is the type of value judgment that the legislature may properly make, since it must weigh the cost of an employees' health plan against other competing programs which the legislature must also fund. A concern about keeping costs "at an affordable level" is a legitimate state interest. See Currie v. Group Ins. Comm'n, 147 F.Supp.2d 30, 38 (D.Mass.2001) (noting that "maintaining a workable disability plan for the Commonwealth's employees, accomplished in part by keeping premiums at an affordable level, is a legitimate state interest").
The final order of the Department is affirmed.
WARNER and STEVENSON, JJ., concur.
NOTES
[1] According to the Department's final order, "[a]s a result of changes at the federal level... effective July 1, 2001 [Blue Cross] began to provide coverage for self-inflicted injuries that occurred on or after July 1, 2001 subject to the provisions and exclusions of the Plan." On or after July 1, 2001, "group health plans may not discriminate with respect to coverage based on health factors such as mental illness and self inflicted injuries that are the result of mental illness. See Federal Register, Monday, January 8, 2001; Rules Governing the Internal Revenue Service, 26 CFR 54.9802. See also: Rules Governing Pensions and Welfare Benefits Administration, 29 CFR 2590.702; and Rules Governing the Health Care Financing Administration, 45 CFR 146.121."