754 So.2d 71 (2000)
Brian L. GLATZMAYER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-0576.
District Court of Appeal of Florida, Fourth District.
March 8, 2000.
Michael Salnick and Ian J. Goldstein of the Law Offices of Michael Salnick, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, J.
Following a robbery in which the victim was killed, appellant was brought in for questioning as a suspect. After signing a waiver of his Miranda rights, he made a non-recorded confession to two officers. When the officers asked appellant if they could record his confession, he asked them if they "thought he should have an attorney." Their response was that it was not their decision, but rather his decision. Appellant then gave a taped confession which was admitted in evidence at his trial resulting in a conviction of first degree murder. Because the officers' answer to appellant's question was not "straightforward" as is required by Almeida *72 v. State, 737 So.2d 520, 526 (Fla.1999), the confession is not admissible in evidence.
Appellant and three of his friends called an acquaintance who sold drugs and asked him to deliver some drugs to them in a park. The plan was that appellant and one of his friends would meet the victim, and the two others would drive up in a car and pretend they were robbing appellant, appellant's friend, and the victim. The plan went as anticipated until one of the robbers shot and killed the victim. Appellant stayed at the scene with the victim and, when the police came, told them there had been a drive-by shooting.
Later, appellant contacted the police in order to give a more truthful statement, and after he was taken to the station and read his Miranda rights, he gave a nonrecorded statement. The officers then asked appellant if he would give a recorded statement, and at that time he asked the officers if they "thought he should have an attorney." Their response was that it was not their decision, it was up to him. Appellant, who was eighteen, then asked to speak with his mother, who was brought to the station. After speaking with her he gave a recorded confession.
Appellant moved to suppress the recorded confession, but the trial court denied the motion. Appellant argues that his motion to suppress should have been granted, arguing that this case is indistinguishable from Almeida, in which our supreme court held:
[I]f, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer.... Once the officer properly answers the question, the officer may then resume the interview (provided of course that the defendant in the meantime has not invoked his or her rights). Any statement obtained in violation of this proscription violates the Florida Constitution and cannot be used by the State.
Id. at 525.
In Almeida the suspect was being questioned about several murders. As in the present case, he was read his Miranda rights, waived them in writing, and made an unrecorded admission that he had committed one murder. The officers then prepared to take a recorded statement and the following took place:
Q. Do you wish to speak to me now without an attorney present?
A. Well, what good is an attorney going to do?
Q. Okay, well you already spoke to me and you want to speak to me again on tape?
Q. ...We are, we are just going to talk to you as we talked to you before, that is all.
A. Oh, sure.
Almeida then confessed to three different murders.
Our supreme court reversed Almeida's conviction because the trial court erred in admitting his confession. In so holding the court acknowledged its holding in State v. Owen, 696 So.2d 715, 719 (Fla.1997):
Thus, we hold that police in Florida need not ask clarifying questions if a defendant who had received proper Miranda warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived his or her Miranda rights.
The Almeida court then observed:
There was nothing equivocal about this exchange and certainly nothing unclear about Almeida's question-it was a simple, direct question, susceptible of but a single interpretation. Almeida very clearly was asking the officer for fundamental information concerning his right to counsel.
Almeida, 737 So.2d at 524. The Almeida court then referred to its decision in Traylor v. State, 596 So.2d 957 (Fla.1992), in *73 which it had set forth guidelines for use under the Florida constitutional right to counsel, which it characterized as similar to Miranda rights:
The Court in Traylor thus held that if a suspect indicates in any manner that he or she wants the help of a lawyer the interrogation must cease. This proscription necessarily embraces a scenario such as the present, for the defendant here was seeking basic information on which to make an informed decision concerning his right to counsel. No valid societal interest is served by withholding such information. Indeed, both sides can only benefit from disclosure: Disclosure ensures that any subsequent waiver will be knowing and intelligent, and it reaffirms those qualities in a prior waiver. Nondisclosure, on the other hand, is doubly harmful: It exacerbates the inherently coercive atmosphere of the interrogation session, and it places in doubt the knowing and intelligent nature of any waiverwhether prior or subsequent. [Footnote omitted].
Almeida, 737 So.2d at 525. The Almeida court held:
[W]e hold that if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer. To do otherwisei.e., to give an evasive answer, or to skip over the question, or to override or "steamroll" the suspectis to actively promote the very coercion that Traylor was intended to dispel.... Any statement obtained in violation of this proscription violates the Florida Constitution and cannot be used by the State. See Traylor, 596 So.2d at 966.
In the present case, we conclude that Detective Mink should have made an honest effort to answer Almeida's question concerning his right to counsel. Both Almeida and the State would have benefitted from the dissemination of basic, common sense information concerning this right. Instead, by ignoring the question and continuing the interrogation i.e., by "steamrolling" the defendant the officers did two things. First, they exacerbated the inherently coercive atmosphere of the interrogation session. (How could Almeida feel free to exercise his rights when police had just overridden his question concerning those rights?) And second, they placed in doubt the validity of the prior waiver. (How could Almeida have knowingly and intelligently waived his rights earlier if he did not know "what good ... an attorney [is] going to do?")
The Almeida court concluded:
Article I, section 9, Florida Constitution, requires that whenever a suspect's rights are clearly raised in the interrogation roomwhether by police or the suspectofficers must pursue the matter in an open and forthright manner. In such a situation, gamesmanship of any sort by the officers is forbidden.
Id. at 526.
In Almeida the interrogating officers ignored the suspect's question and went on as if it had not been asked. In the present case the officers did not ignore the question, but their answer does not comply with Almeida. It was not a "simple and straightforward answer," nor was it "an honest effort to answer [appellant's] question concerning his right to counsel." Almeida, 737 So.2d at 525.
"Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." United States v. Cronic, 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)(quoting Walter V. Schaefer, Federalism and State Criminal Procedure, 70 Harv.L.Rev. 1, 8 (1956)). Clearly, the only straightforward answer to appellant's question would have been some type of affirmative response. We *74 therefore conclude that the confession must be suppressed.[1]
The state argues that the admission of the recorded confession was harmless because appellant had previously given a non-recorded confession prior to asking the officers if they thought he should have counsel. The state did not have the officers testify, however, as to the non-recorded confession. Nor could the admission of the confession have been harmless in light of the other evidence, because a key issue was whether appellant knew that the shooter would bring his gun to the robbery, and appellant made incriminating statements in that regard in his recorded confession.
We have considered the other issues raised by appellant and find them to be without merit. We therefore reverse and remand for a new trial. We certify the following question as one of great public importance:
WHEN SUSPECTS WHO ARE CONSIDERING WAIVING THEIR MIRANDA RIGHTS ASK LAW ENFORCEMENT OFFICERS IF THEY SHOULD INVOKE THE RIGHT TO COUNSEL, WHAT DOES ALMEIDA REQUIRE OF THE OFFICERS?
FARMER and STEVENSON, JJ., concur.
NOTES
[1] We have deliberately avoided stating that the trial court should have granted the motion to suppress because Almeida was not decided until this case was on appeal. Miranda, as interpreted by Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), which was adopted in State v. Owen, 696 So.2d 715 (Fla.1997), would not have required suppression. We, however, must apply the law in effect at the time of our decision. Cantor v. Davis, 489 So.2d 18 (Fla. 1986).