777 So.2d 1138 (2001)
Ramon FRANCO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-814.
District Court of Appeal of Florida, Fourth District.
January 31, 2001.
*1139 Glenn H. Mitchell, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, J.
We withdraw our opinion which was filed on December 6, 2000 and substitute the following.
Appellant was convicted of second degree murder with a firearm and attempted robbery with a firearm. He argues that the trial court erred in the denial of a challenge of a juror for cause and the denial of his motion for disqualification. We reverse.
Appellant was convicted of being the shooter in a murder described in Glatzmayer v. State, 754 So.2d 71 (Fla. 4th DCA), rev. granted, 767 So.2d 461 (Fla.2000)(Table, No. SC00-602).
On voir dire, one of the jurors was asked how she would react if appellant did not take the witness stand or put on a defense, and she responded that she would "find him guilty." After further discussion including an explanation about burden of proof quoted in the dissent, the juror's final response was: "It is interesting. I guess I still have to go with the State.... Because I'm not hearing any other side."
As this court explained in Bryant v. State, 765 So.2d 68, 71 (Fla. 4th DCA 2000):
In assessing a juror's competence, the test is "`whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instructions on the law given to him [or her] by the court.'" If there is any reasonable doubt about the juror's ability to be impartial, he should be excused. "`Close cases should be resolved in favor of excusing the juror rather than leaving a doubt as to his or her impartiality.'" [citations omitted]
The state responds that this juror stated that "I would like to think I can be impartial." The problem with the state's reliance on that is that it was given before she expressed her problems with the burden of proof and presumption of innocence. This juror never stated that she could follow the law after expressing her problems with the burden of proof and presumption of innocence. There was no attempt to rehabilitate the juror. See Marquez v. State, 721 So.2d 1206, 1207 (Fla. 3d DCA 1998). Even if she had, it would not have necessarily made her acceptable. Akins v. State, 694 So.2d 847 (Fla. 4th DCA 1997); Huber v. State, 669 So.2d 1079 (Fla. 4th DCA 1996).
The state also cites Mendoza v. State, 700 So.2d 670 (Fla.1997) for the proposition that the trial court is in the best position to assess a juror's demeanor and sincerity, and should not be reversed absent an abuse of discretion. Where, as in this case, a juror expresses views on a defendant's failure to testify or put on evidence, and there is no subsequent change in those views, the trial court's superior vantage point and discretion are of little consequence. We agree with appellant that a new trial is required.
*1140 Appellant also argues that his motion to disqualify the judge before sentencing should have been granted. The motion to disqualify, which was filed after the jury found appellant guilty, was supported with an affidavit of appellant's counsel, which stated in part:
5. During the trial and at all times material up to today, the undersigned in good faith believes that the Honorable Howard Berman has exhibited such animosity and disrespect for the undersigned defense counsel that the Defendant, RAMON FRANCO, believes that said judge is prejudiced and biased against the Defendant and he will not be sentenced fairly.
6. More specifically, during the trial the Honorable Howard Berman on several occasions, in open court, raised his voice and yelled at the defense counsel while representing the Defendant at trial. Further, Judge Berman's facial gestures and conduct exhibited a lack of control and lack of judicial temperament.
7. It appeared that the Honorable Howard Berman was displeased by the jury's verdict in the Defendant, RAMON FRANCO's case. Before the jury was dismissed, the Honorable Howard Berman made a special point of berating defense counsel before the members of the jury for a delay between the parties resting their case and closing arguments. In fact, the Honorable Howard Berman misrepresented the actual circumstances to the jury as part of the delay was directly attributable to Judge Berman wanting to hold his morning calendar to hear other cases. Therefore closing arguments were set in the afternoon rather than in the morning.
8. Further, subsequently in an unrelated case, the undersigned entered an appearance on behalf of another client whose case was before Judge Berman. When the undersigned appeared at calendar call, just several days after his appearance, Judge Berman in open court told the undersigned attorney that he was entering this case "at his own peril." The undersigned interpreted this comment as a personal threat.
The affidavit also alleged that appellant's counsel had recently learned that the trial court, in front of other lawyers, had suggested that appellant's counsel had lied to the court about being unable to appear because he was in trial in another case. Appellant also supported the motion with his own affidavit expressing the fear that he would not be sentenced fairly because of the court's animosity towards his counsel.
A trial court's prejudice against an attorney may be grounds for disqualification when such prejudice is of a degree that it adversely effects the litigant. Ginsberg v. Holt, 86 So.2d 650 (Fla.1956). The focus in criminal cases should be on the defendant's rights. Robinson v. Tobin, 547 So.2d 714 (Fla. 3d DCA 1989). We agree with appellant that the trial court should have granted the motion to disqualify. Accordingly, another judge should be assigned for appellant's new trial.
We have considered the other issues raised by appellant and find them to be without merit, except for one sentencing issue, which could arise again after retrial. That issue is whether a life sentence without any form of early release, which can be imposed when sentencing points total 363, is a departure sentence requiring written findings.
Our sentencing guidelines statute, section 921.0014, Florida Statutes (1997) provides in subsection (2):
State prison months = total sentence points minus 28.
The recommended sentence length in state prison months may be increased by up to, and including, 25 percent or decreased by up to, and including, 25 *1141 percent, at the discretion of the court. The recommended sentence length may not be increased if the total sentence points have been increased for that offense by up to, and including, 15 percent. If a recommended sentence under the guidelines exceeds the maximum sentence otherwise authorized by s. 775.082, the sentence recommended under the guidelines must be imposed absent a departure.

If the total sentence points are equal to or greater than 363, the court may sentence the offender to life imprisonment. An offender sentenced to life imprisonment under this section is not eligible for any form of discretionary early release, except pardon, executive clemency, or conditional medical release under s. 947.149. (emphasis added).
Appellant, who was fifteen years old at the time this crime occurred, scored 411 points on the sentencing guidelines scoresheet, which corresponded to a recommended sentence of 31.9 years. The trial court sentenced him to life under the above emphasized provision, but did not provide findings which are required if this is a departure sentence. See § 921.001(5) and (6).
Appellant argues that this sentence is a departure sentence requiring written findings, but acknowledges that there is authority to the contrary. In Kalapp v. State, 729 So.2d 987, 990 (Fla. 5th DCA 1999), the defendant was given a life sentence under section 921.0014(2), because his guidelines scoresheet reflected more than 363 points, but the court rejected his claim that written findings were required, stating:
Succinctly stated, Mr. Kalapp's claim of error is that the sentence imposed was a departure from the sentencing guidelines because the sentence exceeded 528 months, and thus the trial court was required but improperly failed to articulate reasons for the departure. We disagree. A plain reading of section 921.0014(2) authorizes the trial court to impose a life sentence if the defendant scores 363 or more points. Accordingly, the sentences imposed in this case did not constitute departure sentences.
See also Stoltzfus v. State, 735 So.2d 549 (Fla. 5th DCA 1999).
A departure sentence, which requires findings, is defined in section 921.0016(1)(c), which provides:
A state prison sentence which varies upward or downward from the recommended guidelines prison sentence by more than 25 percent is a departure sentence and must be accompanied by a written statement delineating the reasons for the departure, filed within 7 days after the date of sentencing.
The life sentence imposed in this case does vary by more than twenty-five percent from the recommended sentence of 31.9 years. It therefore meets the definition of a departure sentence under section 921.0016(1)(c) and requires written findings.
The statute provides that the trial court "may" impose a life sentence when sentence points are 363 or more. The decision to apply this provision, accordingly, is discretionary. If the trial court had not exercised its discretion to impose a life sentence, it could only have increased the recommended sentence of 31.9 years by twenty-five percent, to 39.9 years, without written findings. Considering that the appellant was fifteen at the time this crime occurred, the life sentence could more than double the 31.9 year recommended sentence. Requiring the trial court to provide written findings when it exercises its discretion to increase a sentence to life is consistent with the provision requiring written findings when a trial court exercises its discretion to increase a sentence by more than twenty-five percent.
In addition, if this provision is susceptible of different interpretations, it must be construed most favorably to the accused. § 775.021(1), Florida Statutes (1997).
Reversed.
*1142 SHAHOOD, J., concurs.
GROSS, J., dissents in part with opinion.
GROSS, J., dissenting in part.
In this case we have clarified the majority opinion by deleting language from the fifth paragraph which erroneously indicated that juror Greer had a son whose problems would influence her in this case. The deletion of these facts makes even a weaker case for overruling the trial court's ruling on the cause challenge.
Therefore, I readopt my original dissent from the majority on the issue concerning the failure to excuse juror Greer for cause. In denying the challenge, the trial court explained:
I am going to find that the wording of some of the questions by defense were confusing. There were some hypotheticals [sic] even though we know that [defense counsel] is just not going to sit there and not do anything.
From a reading of the record, it appears that the juror was initially responding to a series of poorly phrased hypothetical questions from defense counsel assuming that he would not participate at all in the trial and just walk "out the door."
When defense counsel asked juror Greer if she would expect him "to put on a case," she replied "I don't have to hear from youhim, but yes, I would expect you to defend him."
When the juror asked defense counsel to explain the burden of proof and the right of a defendant not to put on a case, defense counsel said:
Sure. The burden rests entirely on the State to prove each and every element beyond a reasonable doubt and it is a tough, tough job and it could be a situation where they just don't cut it in their own case. I mean they just don't prove something. I mean, a reasonable doubt can be found in that context but can you stilla lot of folks may think I still want to hear from the evidence, the Defendant, I mean. I don't care that the State fell a little bit short. I want to hear their side and if they don't, hey, I'm sorry, I'm just going from what, with the State, or whatever. I don't know if that helps at all.
Given such a confusing explanation of the duties of a juror under the law, it is no wonder that juror Greer gave the answer she did. She might well have confessed to the Lindbergh kidnapping to avoid further questioning.
It is not unusual that prospective jurors have difficulty with the presumption of innocence. See Waddell v. State, 458 So.2d 1140, 1141-42 (Fla. 5th DCA 1984). The record in this case fails to demonstrate that the juror has a state of mind regarding the case that would have prevented her from acting with impartiality. See § 913.03, Fla. Stat. (2000). The trial judge did not abuse his discretion in denying the challenge for cause. See Cook v. State, 542 So.2d 964, 969 (Fla.1989) (observing that "[t]here is hardly any area of the law in which the trial judge is given more discretion than in ruling on challenges of jurors for cause").
I agree with the majority's resolution of the disqualification issue. I write to emphasize that in evaluating a motion to disqualify a trial judge, the "ultimate inquiry is `whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial.'" Rogers v. State, 630 So.2d 513, 515 (Fla. 1993) (quoting Livingston v. State, 441 So.2d 1083, 1087 (Fla.1983)). "This determination must be based solely on the alleged factsthe presiding judge `shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification.'" Rogers, 630 So.2d at 515 (quoting Fla.R.Crim.P. 3.230(d)). Thus, this court's holding on this issue does not mean that we have found that the facts alleged in support of the motion to disqualify were true.