830 So.2d 136 (2002)
Arthur JAFFE and Steven Loevner, as personal representative of Mata Jaffe, Appellants,
v.
David J. APPLEBAUM, M.D.; David J. Applebaum, M.D., P.A.; and CHPA District # 9 Plastic and Reconstructive Surgeons, IPA, Inc., Appellees.
No. 4D01-3252.
District Court of Appeal of Florida, Fourth District.
September 25, 2002.
Rehearing Denied November 27, 2002.
*137 Sharon Degnan and Bradley Winston of Law Offices of Winston & Clark, P.A., Plantation, for appellants.
Ralph O. Anderson and Mark Hicks of Hicks, Anderson & Kneale, P.A., Miami, for appellees.
DELL, JOHN W., Senior Judge.
Steven Loevner, as personal representative for Mata Jaffe, and Arthur Jaffe, Mata Jaffe's husband ("appellants"), appeal an adverse final judgment entered against them upon a verdict in favor of the Defendants in a medical malpractice action. Appellants alleged that appellee, Dr. David Applebaum, performed an elective CO2 laser resurfacing procedure upon Mata Jaffe's face and that her face became infected and permanent scarring resulted.
Appellants contend that the trial court abused its discretion in limiting the scope of voir dire and in failing to grant a new trial or mistrial because appellee's expert violated an order in limine. Appellants also contend that the trial court abused its discretion in failing to strike a juror for cause. Appellants have failed to demonstrate that the trial court abused its discretion by limiting the scope of voir dire, or in failing to grant a new trial or mistrial because appellee's expert violated an order in limine. However, we agree with appellants that the trial court abused its discretion in failing to strike juror Minker for cause.[1]
During voir dire, appellants' counsel questioned the prospective jurors concerning whether they had any reservations or feelings or opinions about people who have elective cosmetic surgery and suffer a complication as a result of the surgery. During the course of this questioning, the following dialogue occurred between appellants' counsel and juror Minker:
MINKER: Well, I wouldn't have cosmetic surgery either.
WINSTON: If a loved one came to you and said listen, I have something about myself that Ithat bothers me. And I'd like to be the best I can, and I'm going to have a cosmetic procedure, what would you tell that person? Would you say, you know what, I love you and I support you, do whatever you want. Would you say look, I think that risks outweigh the benefit, don't do it? How would you handle that situation?
MINKER: I don't know. When a person takes a knife and cuts your skin open like that. I don't know how they do it anyhow because, you know, I don't know what I'd tell them. I wouldon their face or something like that, I don'tit would have to be reallyI mean, if they're just going to correct their nose or something like that, and I *138 can't even tell the difference, I'd say they're a fool.
...
MINKER: I've had two surgeries. I've had two accidents, car accidents, and it was reconstructive surgery from a doctor for my face. And I had my garage door smash me, and I was put in the hospital again for my face, my nose, and twice, two different times and I did almost die. So, I owe my life to a surgeon and a plastic surgeon.
WINSTON: Do you think that that feeling will stay with you as you deliberate in this case if you're chosen as a juror?
MINKER: I guess the feeling would be there somewhere.
WINSTON: Do you think that as a result of that feeling that we might be starting out with a half strike against us knowing what The Court has told you what the case is about?
MINKER: Well, I owe mytwo plastic surgeons, two different ones. I owe myI guess it would be a little bit.
Juror Minker also answered yes when asked whether he thought that "when someone goes in for an elective procedure for cosmetic reasons if something goes wrong it is partly their own fault?" The trial court denied appellants' motion to strike Mr. Minker for cause and, after appellants had exhausted their peremptory challenges, their motion for an additional challenge to excuse juror Minker.
In Bryant v. State, 765 So.2d 68, 71 (Fla. 4th DCA 2000), this court stated:
[i]n accessing a juror's competence, the test is `whether the juror can lay aside any bias or prejudice and render [his or her] verdict solely upon the evidence presented and the instructions on the law given [to him or her] by the court.' [citation omitted.] If there is any reasonable doubt about the juror's ability to be impartial, he should be excused. `Close cases should be resolved in favor of excusing the juror rather than leaving a doubt as to his or her impartiality.' Chapman v. State, 593 So.2d 605, 606 (Fla. 4th DCA 1992)(quoting Sydleman v. Benson, 463 So.2d 533 (Fla. 4th DCA 1985)).
Mr. Minker candidly admitted that he owed his life to his surgeon and plastic surgeon. He also admitted that because of this experience, appellants would be starting out with a half strike against them. In addition he believed a person who undergoes elective cosmetic surgery is a "fool." We conclude that juror Minker's responses were sufficient to create a reasonable doubt as to his impartiality. We recognize that neither party attempted to rehabilitate juror Minker by asking him whether he could set aside his feelings and base his verdict on the evidence and the law as given to him by the court. However, we also conclude that any attempt to rehabilitate juror Minker would have been futile in light of his responses to appellants' questions. See Franco v. State, 777 So.2d 1138 (Fla. 4th DCA 2001).
Accordingly, we hold the trial court abused its discretion when it denied appellants' motion to strike juror Minker for cause. We, therefore, reverse and remand this cause for a new trial.
REVERSED AND REMANDED.
KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] Appellants argue in their initial brief that an additional juror should also have been dismissed for cause; they candidly admit in their reply brief that such argument was not preserved. Therefore, we need not address that issue.