DAMOORGIAN, J.
This is an appeal from a final judgment entered on a jury verdict in favor of the appellants, Grace and Gary Embleton (the Embletons). On appeal, the Embletons claim that the trial court erred in denying their challenge of a prospective juror for cause. We affirm after concluding that the trial court did not abuse its discretion by denying the cause challenge.
By way of background, the Embletons sued Frank Senatus for injuries sustained in an automobile collision. During jury selection, counsel for both parties questioned the prospective jurors in an effort to reveal any biases or prejudices. After counsel for both parties completed their questioning of the prospective jurors, the Embletons’ counsel moved to strike prospective Juror D.S. for cause based on the following reasons:
MR. LEOPOLD: A variety of reasons, three specifically. One, as it relates to intangible damages of pain and suffering, philosophically she has a problem with those damages. She stated that we already were starting behind at the beginning. On the issue of dollar amounts, same thing, that we would be starting behind if we were looking for large damages, seven-figure damages, et cetera. And then additionally, as it relates to these kind[s] of lawsuits, she’s got a philosophical problem with them and that we are already at the outset starting behind.
Counsel for the defendant, Frank Senatus, responded:
MR. GIARDINO: Again, Your Honor, she said she could follow the law. Actually, she also said that ... a person should get what they deserve, and I think that’s certainly more than fair, and I don’t think [Juror D.S.] should be striken.
Ultimately, the trial court denied the cause challenge explaining:
THE COURT: ... I didn’t hear [her] say that she was putting a cap on anything. What I heard is that she could follow the law. I think that she just made a general comment, like most people, they’re always Concerned about large awards. And I’m going to deny the motion for cause on her.
The Embletons argue that Juror D.S.’s answers to questions concerning her views with regard to personal injury actions, personal injury attorneys, and damages created a reasonable doubt as to her ability to be fair and impartial.
The standard for reviewing a trial court’s decision concerning a challenge for cause of a prospective juror is abuse of discretion. Weinstein Design Group, Inc. v. Fielder, 884 So.2d 990, 994 (Fla. 4th DCA 2004). “On appeal the question is not whether a reviewing court might disagree with the trial court’s findings, but *595 whether those findings are fairly supported by the record.” Trotter v. State, 576 So.2d 691, 694 (Fla.1990). Because a trial court generally has a “unique vantage point” to assess the appropriateness of a challenge for cause, it will not be disturbed on appeal “in the absence of manifest error.” Weinstein Design Group, Inc., 884 So.2d at 994 (citing Smith v. State, 699 So.2d 629, 635-36 (Fla.1997)).
The test for assessing a juror’s competency is “whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the [court’s] instructions.” Id. If any reasonable doubt exists as to the juror’s impartiality, he or she must be excused for cause. Id. at 995 (citing Bryant v. State, 765 So.2d 68, 71 (Fla. 4th DCA 2000)). However, this test does not require that a prospective juror be devoid of preconceived notions or opinions so long as the juror can lay aside preconceived notions or opinions and render a verdict based on the evidence in court. Rolling v. State, 695 So.2d 278, 285 (Fla.1997).
A juror should be excluded for cause when her statements confirm that she cannot set aside “the edge” that she would give to one party at the beginning of the case. In Weinstein Design Group, Inc., this Court held that the jurors should have been excluded for cause when they expressly admitted their bias in favor of one of the parties. 884 So.2d at 996. When asked by counsel whether both sides were starting out even, one juror responded that “there would be an edge and that you would have to catch up to them, but they would go in with the edge.” Id. at 995. To the same question, another juror responded, “I believe the Plaintiff does have a little bit of an edge.” Id. This Court then determined that further questioning did not rehabilitate the jurors. Id. at 996; see Franco v. State, 777 So.2d 1138, 1139 (Fla. 4th DCA 2001) (noting that the juror never stated she could follow the law, although such statement would not necessarily be dispositive). Based on these statements, this Court reversed the denial of the challenges for cause and remanded for a new trial. Weinstein Design Group, Inc., 884 So.2d at 1003.
Here, the Embletons argue that Juror D.S.’s responses to questions posed during jury selection raised a reasonable doubt as to her ability to be fair and impartial. In support of their argument they cite to the following examples:
MR. LEOPOLD: [H]ow many of you have negative feelings towards attorneys who sue companies, who sue individuals. [JUROR D.S.]: I think if something happens to someone, that they should be compensated for their loss. But I think that we’ve become a really sue happy society, and I’m not for that. I mean, who’s to determine — how you can put a dollar amount on somebody’s pain and suffering? But when it’s more than ten people make in a lifetime, I don’t get that.
This exchange was followed by counsel asking the panel to rank their negative feelings toward personal injury attorneys on a ten-point scale with one being the least and ten being the most, Juror D.S., responded a “five or six.”
The Embletons’ counsel then informed the prospective jurors that during the trial, while one of the plaintiffs was testifying, the other might be absent from the courtroom due to emotional strain. Counsel inquired whether that would pose a problem for any of the prospective jurors. Juror D.S. responded, “sort of,” and followed with, “I don’t guess it has any bearing on the evidence. I just feel that if it were me and I was looking for compensation, I would want to hear all of the testimony. That’s all I was saying.” When *596 asked how she would rank her negative feelings concerning both parties not being in the courtroom at the same time, she stated that she would place them in “[t]he middle.” After further inquiry Juror D.S. responded, “a five.” This was followed by counsel asking whether she felt that the Embletons were starting off behind, to which the challenged juror responded, “yeah.”
The Embletons’ attorney also asked whether anyone had any negative feelings toward large verdicts or settlements. Juror D.S. stated, “I think that, you know, people should be made to pay for what they did, but I think some of the settlements are off the charts.” When asked in a follow-up question whether there should be caps on damages, Juror D.S. responded,
I think that fair is fair, and I think that a person should get what they deserve. But I think far too often, the awards are outrageous and it ruins peoples lives. And they call them accidents for a reason .... I definitely believe that there ought to be some sort of regulation.
In regards to a question concerning the awarding of intangible damages, Juror D.S. agreed with another potential juror, who stated:
[JUROR F.MJ: [We] all pay a hell of a lot of money for insurance, and that when you get in the car, you’re taking a certain amount of risk.... As far as pain and suffering goes, I think the burden would really be, in this case, [on] you to convince me that besides the medical and anything to make what was wrong right ... you would have to be pretty convincing.[1]
Finally, counsel for Frank Senatus posed the following question to the group of prospective jurors:
There was some discussion with Mr. Leopold about damage awards, seven figures for pain and suffering. He asked you a couple of times, do we feel that the plaintiff starts a little bit behind the process. Let me ask you all as a group: Is anybody here unable or unwilling to follow the Court’s instructions as it relates to the awarding of damages? Anybody feel they cannot comply with the Court’s instructions on those issues?
Only one prospective juror, not Juror D.S., raised her hand and she was stricken for cause.
We conclude that the trial court did not abuse its discretion by failing to grant the cause challenge for Juror D.S. because her statements taken collectively do not raise a reasonable doubt as to her ability to follow the law or be fair and impartial. On the contrary, Juror D.S. stated that people should be compensated for their losses and that those responsible should pay for what they did. While Juror D.S. expressed a general disenchantment with large jury verdicts and personal injury suits, these statements did not indicate that she was unwilling to award plaintiffs fair compensation if they met their burden of proof. Unlike in Weinstein Design Group, Inc., where the jurors expressed strong feelings toward one of the parties, Juror D.S.’s statements concerned personal injury suits and attorneys in general. As the Florida Supreme Court recognized in Rollings, mere preconceived notions about a case are insufficient to raise a reasonable doubt as to a juror’s ability to be fair and impartial. 695 So.2d at 285. To hold otherwise would be to “establish an impossible standard.” Id.
*597 The Embletons also argue that Juror D.S.’s statement that plaintiffs would be starting off behind if they were not in the courtroom during all parts of the trial raised a reasonable doubt as to her ability to be fair and impartial. This specific ground, however, was not raised during voir dire and therefore was not preserved for appellate review. See Suri v. State, 937 So.2d 216, 219 (Fla. 3d DCA 2006) (holding that the argument that the juror’s responses were equivocal was not raised before the trial court and thus not preserved); see also Maxwell v. State, 443 So.2d 967, 970 (Fla.1983) (noting that the objection must clearly state the grounds on which it is sought so as to preserve the issue for appellate review).
Accordingly, the trial court did not abuse its discretion in finding that Juror D.S. could decide the case solely on the evidence presented. See Liberty Mut. Ins. Group v. Williams, 760 So.2d 197, 198 (Fla. 3d DCA 2000) (citing Gore v. State, 706 So.2d 1328, 1332 (Fla.1997)) (noting that “[t]he decision to deny a challenge for cause will be upheld on appeal if there is support in the record for the decision”).

Affirmed.

STONE and WARNER, JJ., concur.

. Although the Embletons rely on the other juror's statement as support for Juror D.S.’s bias, they did not attempt to strike Juror F.M. for cause or use a preemptory challenge to remove him from the jury pool.