MORRIS, Judge.
Appellant Evelyn Pelham appeals a final judgment entered in her favor after a jury awarded Pelham partial damages resulting from the negligence of appellee Josephine Walker. We find merit in Pelham’s arguments that the trial court erred in denying her challenge to a juror for cause and that the trial court erred in not allowing her to inform the jury about her Social Security disability status after defense counsel opened the door to such evidence. Pelham also appeals an order denying her motion to tax costs against Walker.[1] We reverse both the final judgment and the order on costs for the reasons expressed below.
I. Final judgment on damages
The parties were involved in a motor vehicle accident in 2008. Pelham brought a negligence action against Walker. Walker admitted that she was at fault for the accident. The jury returned a verdict awarding Pelham $36,400 in past medical expenses and past lost earnings. The jury found that there was no permanent injury and awarded zero future lost earnings, zero future medical expenses, and zero noneconomic damages. The following facts are pertinent to the issues on which we reverse.
A. Voir Dire
During jury voir dire, Pelham’s counsel asked the venire how they felt about noneconomic damages, such as pain and suffering or loss of enjoyment for the capacity of life. A veniremember, Juror G, stated, “I don’t like them, but I can follow the law.” When asked why she does not like noneconomic damages, she stated that she was a risk manager and that such damages seemed “punitive against the other side.” She explained that for the past twelve years, she had assessed worker’s compensation and general liability claims and reviewed about 300 to 400 claims per year. Pelham’s counsel asked Juror G if she “might be slightly more defense-oriented,” and she answered, ‘Tes. Yes, absolutely.” Pelham’s counsel asked if her past experiences might “make it difficult for [her] to be fair and impartial sitting as a juror in this particular case.” Juror G answered that “without knowing any more than I do right now,” she could not say yes or no. The following exchange then occurred:
[PELHAM’S COUNSEL]: Is there that thought in the back of your head that when, if you got selected on the jury, *1116 you might be sitting there thinking, oh, I just know from my experience I’d be looking for certain things because of what I’ve analyzed during the past? [JUROR G]: Yes.
At the conclusion of Pelham’s counsel’s questioning of the venire, he asked whether the panel members could not base their decisions on sympathy and whether the panel members would base their decisions solely on the facts, evidence, and law as instructed by the judge. The transcript in this case does not reflect that any venire-member responded to either question.
During defense counsel’s questioning of the venire, defense counsel generally asked whether the panel members could follow the law as instructed by the judge even if they did not agree with it and whether the panel members could set aside their preconceived notions and prejudices. There is no indication in the transcript if any panel member answered these questions. Defense counsel specifically addressed Juror G and asked if she could “fairly and truly try the issues that are presented in this courtroom and follow the law” given her knowledge and experiences. Juror G answered, “Yes, I do.”
At the conclusion of defense counsel’s questioning, he asked if everyone agreed that they could “hear this evidence fairly, give both sides ... their fair consideration and reach a verdict that’s based on the evidence.” The transcript indicates that the venire panel answered, “Yes.”
Pelham’s counsel moved to strike Juror G from the proposed jury for cause, arguing that her answers indicated that she could not be fair and impartial. The trial court denied Pelham’s challenge for cause. Because he was out of peremptory challenges, Pelham’s counsel moved for an additional peremptory challenge. The trial court also denied that request. Pelham’s counsel objected to the jury, but the trial court denied the objection, and the jury was seated and sworn with Juror G as a member.
We apply the abuse of discretion standard to a trial court’s decision to deny a challenge for cause to a potential juror. See Ault v. State, 866 So.2d 674, 684 (Fla.2003). Although the trial court has discretion in determining a challenge for cause, the challenge must be granted if there is any reasonable doubt regarding a potential juror’s impartiality. See Darr v. State, 817 So.2d 1093, 1093 (Fla. 2d DCA 2002). “[A]mbiguities or uncertainties about a juror’s impartiality should be resolved in favor of excusing the juror.” Carratelli v. State, 961 So.2d 312, 318 (Fla.2007); see also Caldwell v. State, 50 So.3d 1234, 1237 (Fla. 2d DCA 2011).
In Pacot v. Wheeler, 758 So.2d 1141, 1142 (Fla. 4th DCA 2000), jurors stated during voir dire that they would have difficulty following the law regarding damage awards for pain and suffering. The Fourth District held that the trial court abused its discretion in denying cause challenges to the jurors where the jurors were not rehabilitated. The potential juror in this case, Juror G, agreed that she was defense-oriented and expressed concern with awarding noneconomic damages, thereby indicating that the defense would be starting the case with an advantage over the plaintiff. See Hill v. State, 477 So.2d 553, 556 (Fla.1985) (“A juror is not impartial when one side must overcome a preconceived opinion in order to prevail.”); Weinstein Design Grp. v. Fielder, 884 So.2d 990, 995 (Fla. 4th DCA 2004) (holding that jurors should have been dismissed for cause where they agreed that one party was starting the case off with “an edge”); Jaffe v. Applebaum, 830 So.2d 136, 138 (Fla. 4th DCA 2002) (holding that juror should have been dismissed for cause where his answers indicated that plaintiffs would be starting off with a “half strike *1117 against them”). Some of Juror G’s answers were equivocal, but she was “absolutely” certain when she stated that she was defense-oriented.
The subsequent questions asked by both attorneys did not serve to rehabilitate Juror G. Even though Juror G later said that she could be fair and that she could follow the law, she never “recanted or receded from [her] earlier expressed view” that she was “absolutely” defense-oriented and believed that noneconomic damages are punitive to the defense. See Algie v. Lennar Corp., 969 So.2d 1135, 1138 (Fla. 4th DCA 2007) (holding that juror, who believed that every slip-and-fall victim was “at least partially responsible and that this would factor into his decision[,]” was not rehabilitated; even though he subsequently stated that he could be fair, he “never recanted or receded from his earlier expressed view”). In light of Juror G’s answers regarding her work experience and how it affected her view on noneconomic damages, we imagine that it would have been difficult, if not impossible, to rehabilitate her so that she could sit as a fair and impartial juror in this .particular case. See Jaffe, 830 So.2d at 138 (noting that neither party attempted to rehabilitate juror who expressed bias towards defense surgeons but concluding “that any attempt to rehabilitate [the juror] would have been futile in light of his responses to [plaintiffs’ counsel’s] questions”); Club W., Inc. v. Tropigas of Fla., Inc., 514 So.2d 426, 427 (Fla. 3d DCA 1987) (holding that her prior equivocal answers required that juror be dismissed for cause and noting that juror’s subsequent change in opinion, arrived at after further questioning, should be “viewed with some s[k]epticism”). With regard to the issue of rehabilitating a potential juror, the Florida Supreme Court said it best:
It is difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias or prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom from its influence. By what sort of principle is it to be determined that the last statement of the man is better and more worthy of belief than the former?
Johnson v. Reynolds, 97 Fla. 591, 121 So. 793, 796 (1929).
We conclude that Juror G’s answers during voir dire demonstrated a reasonable doubt about her ability to be impartial and that the trial court therefore abused its discretion in denying Pelham’s challenge for cause to Juror G.
B. Pelham’s Disability Status
Prior to trial, defense counsel filed a motion in limine to prohibit any evidence of Pelham’s disability, including that Pel-ham had been determined by the Social Security Administration to be disabled and that Pelham is receiving disability benefits. Pelham agreed. The trial court ruled that such evidence would be excluded.
At trial, defense counsel questioned Pel-ham’s daughter about the fact that her mother did not work, that her mother had not made any effort to seek work, and that her mother “basically lays around and watches TV all day.” After this line of questioning, Pelham’s counsel made an oral motion for the admission of Pelham’s disability status, claiming that the door had been opened by the defense’s questioning. Pelham argued that defense counsel had created a misleading picture for the jury by giving them the impression that Pelham had been voluntarily doing nothing all day, every day when in fact she had been declared disabled by the Social Security Administration. The trial court denied Pelham’s motion.
*1118 We review the trial court’s evi-dentiary rulings for an abuse of discretion. See Hudson v. State, 992 So.2d 96, 107 (Fla.2008) (citing Williams v. State, 967 So.2d 735, 747-48 (Fla.2007); Johnston v. State, 863 So.2d 271, 278 (Fla.2003)). A trial court’s discretion on such matters is limited by the rules of evidence. Id. (citing Johnston, 863 So.2d at 278); Masaka v. State, 4 So.3d 1274, 1279 (Fla. 2d DCA 2009) (citing McDuffie v. State, 970 So.2d 312, 326 (Fla.2007); Johnston, 863 So.2d at 278). In addition, the error must be harmful in order to warrant reversal. Fla. Inst. for Neurological Rehab., Inc. v. Marshall, 943 So.2d 976, 978 (Fla. 2d DCA 2006).
Although the parties had agreed before trial, and the trial court ruled accordingly, that evidence of Pelham’s disability would not be introduced, this matter became relevant when the defense opened the door by eliciting Pelham’s daughter’s testimony that Pelham did not work and was not seeking work. With regard to opening the door to otherwise inadmissible evidence, the Florida Supreme Court has instructed:
“[T]he concept of ‘opening the door’ allows the admission of otherwise inadmissible testimony to ‘qualify, explain, or limit’ testimony or evidence previously admitted.” Lawrence v. State, 846 So.2d 440, 452 (Fla.2003) (quoting Rodriguez v. State, 753 So.2d 29, 42 (Fla.2000)). “The concept of ‘opening the door’ is ‘based on considerations of fairness and the truth-seeking function of a trial[,]’ ” and without the fuller explication, the testimony that opened the door “would have been incomplete and misleading.” Lawrence, 846 So.2d at 452; see also Overton v. State, 801 So.2d 877, 900-01 (Fla.2001) (agreeing that the State is permitted to fill in the gaps in the testimony to correct a false impression left by the defendant).
Hudson, 992 So.2d at 110. Here, the defense’s questioning of Pelham’s daughter misled the jury to believe that Pelham is lazy and so unmotivated to work that she had not bothered looking for employment. The defense did so knowing that Pelham had been declared disabled by the Social Security Administration and that Pelham was prohibited from introducing any evidence of her disability status due to the trial court’s ruling in limine. Fairness considerations required that once the defense introduced the incomplete and misleading testimony, Pelham should have been allowed to offer the complete picture to the jury by explaining that she was receiving disability benefits based on a determination that she is disabled. See State Farm Mut. Auto. Ins. v. Gordon, 712 So.2d 1138, 1139-40 (Fla. 3d DCA 1998) (recognizing that defense should have been permitted to introduce evidence of collateral sources once plaintiff opened the door by purposely misleading the jury by suggesting plaintiff, who had been a successful attorney, was living in abject poverty). The trial court abused its discretion in not allowing such evidence after the defense opened the door.
We note that evidence of collateral sources is generally inadmissible to establish malingering by the plaintiff or to rebut or impeach the plaintiffs stated motivation to return to work. See id. at 1139 (citing Gormley v. GTE Prods. Corp., 587 So.2d 455 (Fla.1991)). But that general rule benefits the plaintiff because collateral source evidence is generally prejudicial to the plaintiff. Here, Pelham sought to introduce evidence of her disability status and benefits once the defense opened the door by questioning her motivation to work. Pelham’s credibility was a central issue in the trial, and we conclude that the trial court committed reversible error in not allowing Pelham to introduce evidence explaining why she does not work once that subject was raised by the defense.
*1119 C. Conclusion
In sum, we reverse the final judgment entered after the jury verdict for the two reasons expressed above and we remand for a new trial on damages. We do not address the two other issues raised by Pelham on appeal from the final judgment.
II. Order on costs
The trial court concluded that Pelham was not entitled to costs, even though a final judgment was entered awarding her partial damages. Pelham correctly argues, and Walker concedes, that because Pelham recovered judgment, she was entitled to an award of costs. See § 57.041(1), Fla. Stat. (2011); Wolfe v. Culpepper Constructors, Inc., 104 So.3d 1132, 1136 (Fla. 2d DCA 2012) (en banc). But because the final judgment is being reversed, the order on costs is also reversed, subject to further proceedings on remand.
Final judgment and order on costs reversed; remanded for further proceedings.
DAVIS, C.J., and CRENSHAW, J., Concur.

. The appeal of the final judgment (2D 11-6128) and the appeal of the order on costs (2D12-1972) were consolidated for all purposes.