NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


JUDITH PEARSON, as personal
representative of the Estate of Donald
Pearson, deceased,

        Appellant/Cross-Appellee,

v.

PHILIP MORRIS USA INC.,

        Appellee/Cross-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2D17-3636


Opinion filed March 1, 2019.

Appeal from the Circuit Court for
Hillsborough County; Paul L. Huey, Judge.

Thomas J. Seider, Celene H. Humphries,
and Maegen P. Luka of Brannock &
Humphries, Tampa; Eric D. Roslansky of
The Ruth Law Team, St. Petersburg; and
Lee D. Gunn IV of Gunn Law Group, P.A.,
Tampa, for Appellant/Cross-Appellee.

Cathy A. Kamm of Shook, Hardy & Bacon
L.L.P., Tampa; and David M. Menichetti
and Geoffrey J. Michael of Arnold & Porter
Kaye Scholer LLP, Washington, DC, for
Appellee/Cross-Appellant.

BLACK, Judge.

Judith Pearson, as personal representative of the Estate of Donald Pearson, appeals the judgment entered in favor of Philip Morris USA Inc. in this Engle[1] progeny case. Mrs. Pearson raises three issues on appeal, only two of which we address: the court's improper denial of a challenge to a prospective juror for cause, requiring the Estate to use a peremptory challenge to excuse him; and the court's ruling allowing Philip Morris to exercise an out-of-turn peremptory strike. We reverse and remand for a new trial. Our reversal for a new trial renders moot Philip Morris's cross-appeal.

During voir dire, counsel for both the Estate and Philip Morris questioned the venire in an effort to reveal any biases or prejudices. One of the initial questions posed by the Estate was, "When you heard this is a man who smoked cigarettes, smoked them till [sic] he got sick and ultimately he died from cigarette smoke and now his family is suing the tobacco company that sold those cigarettes, how many of you said, What? What? Why?" A number of prospective jurors responded affirmatively to the question, one of whom was Juror Ray. And when individually questioned about his response, Juror Ray expressed his opinion that the Estate would begin "in the red" and many questions would need to be answered for the Estate "to move." Juror Ray stated that he believed smoking to be a choice, "more something they just decide to do on their own rather than really being pushed into it one way or another." He also stated that while he believed he could keep an open mind and hear the evidence, the Estate "would have an uphill argument to make."

---

[1]Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

After further questioning of the venire, the Estate's counsel returned to Juror Ray and asked him to remind counsel what his thoughts were with regard to the Estate's lawsuit. Juror Ray responded that he felt the Estate would start "a little behind" because smoking is "a matter of personal choice" and "that's a large barrier on a situation like this." He also stated that his opinion would be measured against the evidence but would be difficult to set aside.

The court granted a number of cause challenges to prospective jurors, a few based on the their opinions with regard to smoking being a conscious choice and the Estate starting at a disadvantage or with a strike against it. The Estate sought to excuse Juror Ray for cause based on his statements that the Estate would begin "in the red" and that smoking was a personal choice. After hearing argument from both parties, the court denied the cause challenge.

The court then turned to peremptory challenges, allowing three per side which could only be used on the six jurors then on the panel. The court would not permit peremptory challenges on alternate jurors:

> So if we get to alternates and you've got a peremptory, you've got to come back and use it against someone who will be in the six. And then you don't – can't use alternate picks back in the six. And then you have an alternate for – you have a strike for the first alternate and the second alternate.
> Once we have the first alternate, if you didn't use a strike, you don't get to save it and use it on the second. So you don't end up with two on the second.

The Estate used one peremptory challenge initially; the panel was then agreed upon, subject to backstrikes. The record is somewhat confusing as to what exactly happened next, but what emerges is that although the Estate's counsel clearly

- 3 -

exercised the first alternate challenge, he also sought to clarify the identity of the first alternate juror. Juror Padgett was the first alternate; however, counsel for the Estate appears to have mistakenly believed that someone other than Juror Padgett was the first alternate. While the Estate's counsel was attempting to resolve the identity of the first alternate, Philip Morris's attorney was permitted to backstrike a panel member, out of turn, which resulted in Juror Padgett being seated on the jury and negating the Estate's first alternate strike. The following exchange occurred between the Estate's counsel and the trial court:

> Estate's counsel: All right. So just so I understand what happened. I was counting to see if I was on the correct alternate, and then I heard, "I'll exercise a peremptory."
>
> The court: That's right.
>
> Estate's counsel: You allowed him to interrupt the alternate challenge to use a peremptory.
>
> The court: I did.
>
> Estate's counsel: Okay. I guess I have to object to the interruption in my exercise of the alternate.
>
> The court: All right. You can object.

Philip Morris used its three peremptory challenges on backstrikes, and the Estate used its final two peremptory challenges on backstrikes, including striking Juror Ray. Counsel for the Estate argued: "In light of your denial for cause, plaintiff renews for cause and/or requests an additional peremptory challenge. . . . We would have – we would have exercised on Padgett if cause for Ray had not been denied." The court denied the cause challenge and the request for an additional peremptory challenge. Juror Padgett ultimately served as the foreperson of the jury.

"We apply the abuse of discretion standard to a trial court's decision to deny a challenge for cause to a potential juror." Pelham v. Walker, 135 So. 3d 1114, 1116 (Fla. 2d DCA 2013). A cause challenge "must be granted if there is any reasonable doubt regarding a potential juror's impartiality." Id. "[C]lose cases involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to impartiality." Four Wood Consulting, LLC v. Fyne, 981 So. 2d 2, 5 (Fla. 4th DCA 2007). And although "a trial court generally has a 'unique vantage point' to assess the appropriateness of a challenge for cause," the court's assessment must be "fairly supported by the record." Embleton v. Senatus, 993 So. 2d 593, 595 (Fla. 4th DCA 2008) (first quoting Weinstein Design Grp., Inc. v. Fielder, 884 So. 2d 990, 994 (Fla. 4th DCA 2004); and then quoting Trotter v. State, 576 So. 2d 691, 694 (Fla. 1990)).

> A trial court's determination of whether a juror can render a verdict based on the evidence presented involves an evaluation of "all of the questions and answers posed to or received from the juror." Although a juror's assurances of impartiality may suggest to a court that the denial of a challenge for cause may be appropriate, such assurances are neither determinative nor definitive. Assurances of impartiality after a proposed juror has announced prejudice [are] questionable at best.

Matarranz v. State, 133 So. 3d 473, 484-85 (Fla. 2013) (citations omitted) (quoting Banks v. State, 46 So. 3d 989, 995 (Fla. 2010)). In this case, Juror Ray did not assure impartiality; he did not declare that he could "render an impartial verdict according to the evidence." Cf. § 913.03(10), Fla. Stat. (2017) ("[T]he formation of an opinion or impression regarding the guilt or innocence of the defendant shall not be a sufficient ground for challenge to a juror if he or she declares and the court determines that he or

she can render an impartial verdict according to the evidence.").  Rather, he declared that he would measure his opinion against the evidence; his opinion remained "a large barrier" in a case like this one.  See Kochalka v. Bourgeois, 162 So. 3d 1122, 1125 (Fla. 2d DCA 2015) ("[Juror's] acknowledgment of bias in favor of one party—regardless of which party it was—should have disqualified her from serving on the jury."); Pelham, 135 So. 3d at 1117 (concluding juror should have been excused for cause where "[s]ome of [the juror's] answers were equivocal, but she was 'absolutely' certain when she stated that she was defense-oriented"); Embleton, 993 So. 2d at 595 ("A juror should be excluded for cause when her statements confirm that she cannot set aside 'the edge' that she would give one party at the beginning of the case.").  The court abused its discretion in denying the Estate's cause challenge to Juror Ray.  See Weinstein Design Grp., 884 So. 2d at 995 (concluding court abused its discretion in denying cause challenges to jurors who "confirmed that they could not set aside 'the edge' they would give" to a party); Jaffe v. Applebaum, 830 So. 2d 136, 138 (Fla. 4th DCA 2002) (concluding court abused its discretion in denying challenge for cause where juror admitted that plaintiffs would be starting out with "a half strike" against them).

"[E]xpenditure of a peremptory challenge to cure the trial court's improper denial of a cause challenge constitutes reversible error if a [party] exhausts all remaining peremptory challenges and can show that an objectionable juror has served on the jury."  Busby v. State, 894 So. 2d 88, 96-97 (Fla. 2004).  Here, had the court excluded Juror Ray for cause, the Estate would have exercised its last peremptory challenge on Juror Padgett.  The court's error in failing to excuse Juror Ray for cause

was compounded when the court failed to follow its own procedure which would have permitted the Estate to exercise its alternate strike on Juror Padgett.[2]  Instead, Philip Morris was permitted—out of turn—to backstrike a juror, placing Juror Padgett on the jury and otherwise requiring the use of a peremptory challenge to excuse her.  See Trotter, 576 So. 2d at 693 ("[The objectionable] juror must be an individual who actually sat on the jury and whom the [party] either challenged for cause or attempted to challenge peremptorily or otherwise objected to after his peremptory challenges had been exhausted."); Tedder v. Video Elecs., Inc., 491 So. 2d 533, 535 (Fla. 1986) ("[T]he only fair scheme is to allow the parties to exercise their challenges singularly, alternately, and orally so that, before a party exercises a peremptory challenge, he has before him the full panel from which the challenge is to be made." (emphasis added) (quoting Ter Keurst v. Miami Elevators Co., 486 So. 2d 547, 549 (Fla. 1986))).

The trial court abused its discretion in failing to excuse Juror Ray for cause, wrongfully forcing the Estate to exhaust its peremptory challenges.  Accordingly, we reverse and remand for a new trial.

Reversed and remanded.

VILLANTI and MORRIS, JJ., Concur.

---

[2]The Estate moved for a mistrial based on the court's decision to negate its use of the alternate strike and to allow Philip Morris's backstrike to stand.  Interestingly, the motion was denied despite the fact that Philip Morris did not oppose granting a mistrial, albeit for different reasons.